FILED - MQ
December 13, 2018 9:28 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_slk_____/_scanned

In the United States District Court
For the Western District of Michigan

ALEX JEROME PERRY JR,

NEW ACTION _____-CV-_____

PLAINTIFF,

HON. 2:18-cv-222
Gordon J. Quist, U.S. District Judge
Timothy P. Greeley, Magistrate Judge

(Enter above the full names of all plaintiffs, including prisoner number, in this action.)

v.

DANIEL LESATZ, et al.,

Defendant(s).

(Enter above the full name of the defendant or defendants in this action.)

## COMPLAINT

I. **Previous Lawsuits**

CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the required $400 filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $350 filing fee regardless whether your complaint is dismissed.

A. Have you ever filed a lawsuit while incarcerated or detained in any prison of jail facility?   Yes ☐   No ☒

B. If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below.
Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1. Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.

2. Is the action still pending?   Yes ___   No ___

   a. If your answer was no, state precisely how the action was resolved:

3. Did you appeal the decision?   Yes ☐   No ☐

    4. Is the appeal still pending?    Yes ☐ No ☐

       a. If not pending, what was the decision on appeal?

    5. Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☐ No ☐

    If so, explain:

II. **Place of Present Confinement** Baraga Correctional Facility, 13924 Wadaga Rd. Baraga, MI 49908

If the place of present confinement is not the place you were confined when occurrence that is subject of instant lawsuit arouse, also list the place you were confined:

III. **Exhaustion of Administrative Remedies**

**CAUTION: You are required by federal law to exhaust your available remedies on any action brought with respect to jail, prison, or other correctional facility conditions before bringing an action in under 42 U.S.C. § 1983.** *See* **42 U.S.C. § 1997e(a). In order to demonstrate exhaustion, you MUST ATTACH ALL DOCUMENTS EVIDENCING EXHAUSTION OF REMEDIES, including Step I, II and III grievances and grievance responses.**
**If you are unable to provide copies of the grievances, you must provide the Court with an affidavit describing the issues set forth in the Step I grievance, the people named in the Step I grievance and the response you received at each level of review.**

  A. Is your place of confinement a facility operated by the Michigan Department of Corrections? Yes X No ☐

  B. If your answer to A was yes, did you file a grievance concerning the facts set forth in this complaint    Yes X No ☐

    1. If your answer is no, explain why a grievance was not filed:

    2. If your answer is yes, list the grievance number(s) and the date listed as "Today's Date" box on the Prisoner/Corrections Client Grievance Form: AMF 1803-0549-28A "03/05/18"; AMF 1803-0550-28A "03/02/18"; AMF 1802-0313-28A "02/08/18"; AMF 1712 02 990 12E3 "12/22/17"

    3. What was the decision upon your grievance at Step I? AMF 1803-0549-28A Rejected as duplicate. AMF 1803-0550-28A Rejected as duplicate. AMF 1802-0313-28A Rejected as duplicate. AMF 1712 02 990 12E3 denied.

  C. If your answer to A and B are yes, did you appeal the Step I decision? Yes X No ☐

    1. If your answer above was yes, what was the Step II decision?

    2. 1803-0549-28A upheld 2) 1803-0550-28A, rejected upheld, 3) 1802-0313-28A rejected upheld, 4) 1712-2990-12E3 no further remedy.

Did you appeal to Step III? Yes X No ☐

    3. If your answer above was yes, what was the Step III decision? AMF 1803-0549-28A rejected upheld 2) 1803-0550-28A, rejected upheld, 3) 1802-0313-28A rejected upheld, 4) 1712-2990-12E3 appeal denied.

D. Does your complaint concern a misconduct charge filed against you?   Yes ☐   No X Please read complaint.

    1. Did you have an administrative hearing on the misconduct charge?   Yes ☐   No X Yes

    If yes, what was the hearing officer's decision?

    2. Did you request an administrative hearing?   Yes ☐ No X

    If you did request an administrative rehearing, what was the decision rendered upon rehearing?

    3. After rehearing, did you appeal the decision in one of the circuit courts for the State of Michigan? Yes ☐ No X

      a. If yes, what was the decision of the circuit court?

      b. Did you appeal the decision of the circuit court?   Yes ☐ No ☐

    If yes, state the decision of the Michigan Court of Appeals and Michigan Supreme Court:

E. If your claim concerns confinement within a facility not operated by the Michigan Department of Corrections, please state in detail the steps you have taken to exhaust your available state remedies prior to filing this lawsuit:

F. If you have taken any other steps to exhaust your state remedies, please describe in detail what steps you have taken:

Legislative Corrections Ombudsman was written.

IV. **Parties**

In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A. Name of Plaintiff

Alex Perry

    Address Baraga Correctional Facility, 13924 Wadaga Rd., Baraga, MI 49908-9204

In Item B below, place the full name of the defendant in the first blank, his or her official position in the second blank and his or her place of employment in the third blank. Use Item C for the names, positions and place of employment of all additional defendants.

Attach extra sheets as necessary. **State whether your are suing each defendant in an official or personal capacity.**

B. Defendant  Daniel LeSatz  is employed as  Warden

Who is being sued in his official and personal capacity

at  Baraga Correctional Facility, 13924 Wadaga Rd., Baraga, MI  49908

C. Additional Defendants

Defendant, **Unknown Neimi,** was/is a RUM of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of RUM and was acting under color of state law.

~~Defendant, **Unknown Usitilo,** is a Nurse of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of Nurse and was acting under color of state law.~~

Defendant, **Unknown Rajala,** is a Nurse of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of Nurse and was acting under color of state law.

Defendant, **Unknown Johnson,** is a Nurse of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of Nurse and was acting under color of state law.

Defendant, **Chung Oh,** is a Doctor of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of Doctor and was acting under color of state law.

Defendant **Unknown Sholden** is a Corrections Officer of the MDOC at Baraga Correctional Facility who, at all times mentioned in this complaint, held the rank of Corrections Officer and was acting under color of state law.

State here, as briefly as possible, the **facts** of your case. Describe how each defendant is personally involved. Include also, the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

### CRUEL AND UNUSUAL PUNISHMENT
### DELIBERATE INDIFFERENCE

1. On 12-15-2017 Plaintiff Alex J. Perry #659823 while playing a game of basketball at AMF facility gym, suffered a fracture to middle finger on his dominant hand. This occurred at approximately 10:30 a.m. to 11:00 a.m., and can be confirmed by AMF gymnasium security camera "video records."

2. Upon returning to the facility Housing Unit 6, Plaintiff spoke to C/O Kuchie, explaining the injury severity and expressing the pain and agony Plaintiff was suffering. Plaintiff stated to the officer that "I need to see a nurse." Plaintiff noticed that C/O Kuchie was impatient and irritated with Plaintiff's request for medical attention and told Plaintiff to "write a medical kite. **Note:** A medical kite usually takes 1 (one) week to respond to.

3. Plaintiff persistently continued to inform staff of the overwhelming pain and inability to move his finger. Staff met complaints with apathy and ignorance. Even the slightest movement invoked the sharpest pain in Plaintiff's finger. Plaintiff continued to express his pain throughout the a.m. shift.

4. Upon arrival of second shift, Plaintiff hit his emergency medical call light located in Plaintiff's cell. At approximately 3:30 p.m. Plaintiff stopped C/O Sholden while conducting unit cell inspections on C-Wing. Four and a half (4½) hours after injury, Plaintiff's finger had swollen immensely and was puffed up. Plaintiff explained his injury to C/O Sholden, requesting medical attention. C/O Sholden responded saying: "Okay" while walking away.

5.Plaintiff later asked C/O Sholden a second time; C/O Sholden told Plaintiff "She'll see you when she does her rounds.

6.Two and a half (2 ½) hours later, at approximately 5:30 p.m., Plaintiff yelled out for Nurse Johnson as she walked past Plaintiff's cell. Plaintiff explained his injury to Nurse Johnson, Plaintiff told Nurse Johnson how the injury occurred and that Plaintiff was in agonizing pain and in need of pain medication. Plaintiff insisted that he needed to see a doctor to have his injury treated and stabilized. Nurse Johnson responded to Plaintiff's request for medical attention by telling Plaintiff "Today is Friday, there's nothing that can be done." Plaintiff then asked Nurse Johnson, well what if it's broken? Johnson responded, "there's still nothing that can be done it's Friday." Plaintiff requested that an emergency medical call be made to the facility doctor, yet Nurse Johnson just walked away. This encounter with Nurse Johnson was on unit camera, that video was requested in grievance AMF 17-12-2990-12E3

7.As Nurse Johnson walked away, Plaintiff asked if he could at least receive some type of pharmaceutical relief for the pain and swelling. Nurse Johnson replied "We'll see"; no medication was provided. Overnight / throughout the night the pain grew so intense that Plaintiff was unable to sleep. Other nearby inmates were able to hear Plaintiff crying out in his cell in agony. In addition to sleep deprivation, Plaintiff's swelling grew worse.

8.The following day, Saturday, Plaintiff spoke to a different nurse, Nurse Finnigan. After Plaintiff showed Nurse Finnigan Plaintiff's finger, Plaintiff explained to Finnigan what Plaintiff was told by Nurse Johnson on the previous day. Nurse Finnigan told Plaintiff that Nurse Johnson was "fairly new and didn't know what to do."

Per Policy, P.D. 03.04.125(F):

> Whenever a person in a CFA or an FOA facility is determined to be in need of emergency medical attention, initial staff response to that emergency shall begin immediately but no later than four minutes after discovery. Staff first upon the scene shall ensure emergency medical assistance is summoned.

Nurse Johnson had a duty to place an emergency call to an appropriate advisor for emergency care.

9.Nurse Finnigan arranged to have Plaintiff pulled from the cell after inspecting Plaintiff's finger. Nurse Finnigan sent Plaintiff to an on-site medical care facility on Saturday at approximately 7 p.m. approx. 33 hours after injury At that time Plaintiff was provided with temporary accommodations, over the counter Ibuprofen, an ice pack and a splint with no tape to support and stabilize the splint. Instead, Plaintiff was given two (2) bandaids, While receiving these accommodations Plaintiff was given instructions on the use of the splint. Nurse Rajala explained to Plaintiff that Plaintiff needs to be sure to remove the splint while showering.

10.On 12/21/17 Plaintiff received his first X-ray, one week after the injury. The results showed a complete bone fracture at the beginning of the middle finger. This did not account for the probability of internal bleeding, and tissue damage that usually accompany a fracture of the bone. The splint itself was insufficient to stabilize the fracture since medical failed to provide any medical tape as needed to secure the splint.

11. Plaintiff continued to lose entire nights of sleep due to excessive intolerable pain. The over the counter brands of medication provided to Plaintiff were not strong enough to alleviate the pain. The slightest toss or turn flared up an incredible amount of pain. The Plaintiff began experiencing insomnia as a result of his injury.

12. On 12/22/17 Plaintiff sent his first complaint to the AMF Step I Grievance Office. The Plaintiff explained his pain and agony with Nurse Johnson's failure to provide prompt medical care.

13. On 1/31/18 a second X-ray was taken of Plaintiff's finger. Dr. Oh explained to the Plaintiff that Plaintiff will need to be sent off-site to be seen by a hand specialist remove his splint every now and then and check for range of motion and also for exercise.

14. On 2/7/18 the Plaintiff wrote a kite to Warden LeSatz describing his pain and pleading for prompt medical attention and proper pain relieving medication. Warden LeSatz made no effort to promptly arrange proper medical treatment.

15. On 2/21/18 the Plaintiff spoke directly with RUM Neimi. At that time Mr. Neimi promised to come and speak with the Plaintiff within Plaintiff's housing unit at a later time. Mr. Neimi never kept his word. In fact, Neimi never made an effort to reach out to Plaintiff to inquire about Plaintiff's medical needs. RUM Neimi was informed directly by the Plaintiff of the issues and a failure to fulfill his duty. RUM Neimi did not just have culpable knowledge and the ability to act, to correct the situation, but RUM Neimi had a policy bound duty to act.

16. Over the course of two months Plaintiff sent over a dozen kites and letters to both, Warden LeSatz and Plaintiff spoke directly to both RUM Neimi and Warden LeSatz. Both demonstrated bitter apathy and reckless disregard for Plaintiff's situation, having inadequately addressed Plaintiff's injury. Both Warden LeSatz and RUM Neimi were readily provided with culpable knowledge of all issues.

17. On 3/2/18, three months after Plaintiff's injury, Plaintiff was sent to the "Advance Center for Orthopedics" for an examination by a professional hand surgeon. After the Plaintiff was examined by Dr. Blotter (surgeon) Plaintiff informed Dr. Blotter on the instructions Plaintiff was given at the on-site health care staff. Plaintiff told Dr. Blotter that Plaintiff was told to remove the splint while showering, and at one point in time to try to move the finger for range of motion. Dr. Blotter explained to Plaintiff that not only was it a bad decision for the facility to wait three months after the injury, but that Plaintiff was "never supposed to have removed the splint, and that they should have never instructed [Plaintiff] to do so." Those reasons alone gave Dr. Blotter reason to believe that those instructions were the cause of mishaps in the Plaintiff's healing process. See Dr. Blotter's report Exhibit ___.

18. Dr. Blotter proceeded to let the Plaintiff know that the instruction on removing the splint and not keeping it stabilized at all times have caused "permanent" damage, and may develop a condition called "Mallet finger" which is a permanent life-long disfigurement of the ligament.

19. On 3/5/18 Plaintiff filed a complaint against Warden LeSatz and RUM Neimi for causing and contributing to an unreasonable delay in Plaintiff's medical process, by acting with deliberate indifference to Plaintiff's serious medical needs. Both Warden LeSatz and RUM Neimi failed to arrange a "timely" medical writ, allowed the process to procrastinate and persistently evaded Plaintiff's inquires and pleas for help. Both Warden LeSatz and RUM Neimi had requisite and culpable knowledge of Plaintiff's injuries and were the administrative authority responsible for arranging a writ for an off-site medical care and corrective

surgery.

20. Plaintiff has labored extensively to exhaust all administrative remedies available to him, including…

    1) All three steps of the MDOC institutional grievance system named all Defendants in each grievance.

    2) Letters / complaints to MDOC Legislative Ombudsman Office resulted in an inconclusive investigation by Keith Barber.

    3) Letters / complaints sent to ACLU officials sought public action.

    4) Letters / complaints to the American Friends Service committee sought public action.

21. Plaintiff persistently fought to resolve these issues at the state level, but Department authorities continued to obstruct relief by assuming a defensive posture, denying all grievances at every step in a conventional ploy to evade liability.

22. Upon seeing Dr. Blotter, who confirmed on "medical records" that it was too late for any "corrective surgery" to correct the Plaintiff's finger and assessed that if Plaintiff is still in pain, surgery will be conducted to "fuse" the bone together at the joint. **NOTE:** A bone fusion will deprive the Plaintiff of mobility in his finger for the rest of his life.

23. There is no excuse for Administration, and Health Care Professional, Dr. Oh, who received several health care kites over the course of a two=month period. They persistently delayed and procrastinated Plaintiff's health care.

24. As a result, in an "unreasonable" two-month delay without corrective treatment along with Nurse Rajala instrurtions, Plaintiff's fractured bone did not heal properly. The Plaintiff is now "permanently" disfigured for the rest of his life as a result of inexcusable negligence by prison staff responsible for Plaintiff's care.

25. P.D. 03.04.125 requires that a prisoner receive prompt medical care for related injuries. Medical care in this situation was procrastinated for over two months, circumventing the healing process, causing permanent immobility and physical disfigurement in the Plaintiff's finger.

26. At the time of the injury, for over a two-month period. Plaintiff explains that the most bothersome was the loss of sleep and bouts of insomnia as a result of prolific pain; the most sleep the Plaintiff received for over two months was three to four hours per night.

27. As a result of deliberate indifference to Plaintiff's serious medical needs by prison staff, Plaintiff suffers the following injuries:

    a. Permanent disfigurement.
    b. Sleep deprivation / insomnia.
    c. Gripping Difficulties.

d. Physical and mental pain and anguish.

28. Prison staff and administrators have acted with deliberate indifference to the Plaintiff's serious medical needs, in violation of the U.S. Constitution Amendments Eight and Fourteen.

## Legal Claims

29. Plaintiff states an Eighth Amendment claim of cruel and unusual punishment, and Fourteenth Amendment claim for denial of equal protection (Founded upon U.S. Federal Constitutional grounds) against Warden LeSatz, RUM Neimi, Dr. Oh, Nurse Johnson, ~~Nurse Supervisor Jefferies,~~ Nurse Rajala for denying Plaintiff adequate and timely medical care, which resulted in the following injuries: Officer Sholden

   1. Permanent life long disfigurement.
   2. Insomnia / sleep deprivation due to intolerable pain.
   3. Physical pain.

30. P.D. 03.04.125 directly entitles Plaintiff to prompt medical care for all serious injuries.

31. Defendants had the raw audacity to actually give the Plaintiff a band-aide to wrap an unsecure loose splint. The over the counter pain meds were obviously not sufficient enough to nullify the degree of pain the Plaintiff was experiencing.

32. Dr. Oh, Nurse Johnson, Nurse Rajala, Officer Sholden all engaged in deliberate indifference by refusing to follow medical policy and procedure. Instructing Plaintiff to remove the splint while showering, to move the finger for range of motion refusing medical request, refusing to call medical was not only malicious deliberate indifference but cruel and unusual punishment by excessive and wanton infliction of extreme pain.

33. The standard of care is set forth by department policy PD 03.04.125 which guarantees a prisoner to receive prompt medical care for serious injuries. After two and a half months, that standard was clearly violated. Federal constitutional law also concurs.

> Deliberate indifference to/by prison officials to inmates serious medial needs constitutes cruel and unusual punishment.

*Molton v. Cleveland*, 489 U.S. 1068 (1989)

34. There are several standards of culpability in a general Eighth Amendment claim, and they include;

   A.) Malicious Intent
   B.) Deliberate Indifference
   C.) Casual Causation

All three forms of culpability can be applied to Defendant's actions in this case. The Plaintiff was forced to wait two months in pain and agony before corrective treatment, which was then too late, a permanent irreparable injury had set in.

Elementary principles under 8th Amendment establish governments obligation

> to provide medical care to prisoners – deliberate indifference to serious medical needs of prisoners, constitutes unnecessary and unwanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97 (1976)

35. Medical care is also a necessity protected by the 14th Amendment.

> Minimum standard to provide medical care to prisoners under the 14th Amendment is a minimum standard under the 8th Amendment.

36. The standard of instilling the requisite culpable knowledge is rooted in Plaintiff persistently pleading to defendants for medical care/corrective treatment and the failure in their duties to act and reckless indifference to such needs.

> Inmate alleging that he was not treated for 3 weeks although he daily requested treatment, that is grievances were dismissed in a disparaging manner, and that physician failed to properly treat him, resulting in gallbladder removal, stated a claim of indifference under 8thy Amendment in 42 USC §1983 complaint. *Tombs v. Bell*, 798 F2d 297 ( __ Cir. 1986)

**Relief Requested**

State briefly and precisely what you want the court to do for you.

WHEREFORE, Plaintiff respectfully prays that this Court will enter judgment granting Plaintiff the following monetary and injunctive relief:

1. The Plaintiff asks the Court to award 150,000.00 in compensatory damages against each Defendant for violation of Plaintiff's 8th and 14th Amendment rights and loss of ligament function.
2. The Plaintiff asks the Court to award "punitive" damages in the amount of 1 million dollars, given the absolute gravity and impact of the offence. The Plaintiff asks the Court to consider the Defendants' "reckless" actions and attitudes and also a lifelong physical impairment that will forever affect Plaintiff's ability to work and enjoy recreation.
3. Trial by jury on all issues triable by jury.
4. Plaintiff's cost of this suit.
5. Attorney fees of this suit.
6. Such other relief as this Court may deem just, proper and equitable.

Dated: 12-11-2018

Alex Perry #659823

### NOTICE TO PLAINTIFF(S)

The failure of a *pro se* litigant to keep the court appraised of an address change may be considered cause for dismissal.

### VERIFICATION

I, Alex Perry, Plaintiff swears under the penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Subscribed and sworn to before me
This 29th day of November
2018.

Notary Public.

11-29-18

Executed at: Alex Perry
Baraga Correctional Facility
13924 Wadaga Rd.
Baraga, MI 49908-9204

LANCE MILLER
NOTARY PUBLIC, STATE OF MI
COUNTY OF MARQUETTE
MY COMMISSION EXPIRES Mar 14, 2023
ACTING IN COUNTY OF Baraga

To: U.S. District Court
314 Federal Building
P.O. Box 698
Marquette, MI 49855

Alex S. Perry #658823
BARGA Corr. Fac.
13924 Wayside Rd
Baraga, Mich 49908