UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALEX J. PERRY,

            Plaintiff,                          Case No. 2:18-cv-222

v.                                           Honorable Gordon J. Quist

DANIEL LESATZ et al.,

            Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Lesatz, Neimi, and Sholden. The Court also will dismiss Plaintiff's equal protection claim against the remaining Defendants.

## Discussion

I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF officials: Warden Daniel Lesatz; Resident Unit Manager (RUM) Neimi; Nurses Unknown Rajala and Unknown Johnson; Dr. Chung Oh; and Correctional Officer Unknown Sholden.

Plaintiff alleges that, on December 15, 2017, at 11:00 a.m., while he was playing basketball, he suffered a fracture to the middle finger of his dominant hand. Plaintiff returned to his unit and spoke to Correctional Officer Kuchie (not a Defendant), explaining what had happened and describing the seriousness of his pain. Kuchie was impatient and irritated and told Plaintiff to write a medical kite. Over the remainder of the first shift, Plaintiff continued to inform unspecified staff about his serious pain and inability to move his finger, but no one took action.

When the second shift arrived, Plaintiff pressed his emergency medical call light. At 3:30 p.m., Defendant Sholden stopped at Plaintiff's cell during his cell inspection. By this time, Plaintiff's finger had swollen and was puffed up. Plaintiff explained his injury and asked Sholden for medical attention. Sholden responded, "Okay," and walked away. (Compl., ECF No. 1, PageID.4.) Plaintiff later asked Sholden a second time, and Sholden responded that the nurse would see Plaintiff during her rounds.

Two and one-half hours later, Plaintiff called out to Defendant Nurse Johnson as she walked past his cell. Plaintiff explained his injury and told her that he was in agonizing pain

and needed pain medication and medical attention. Johnson responded that it was Friday and nothing could be done. When Plaintiff asked, "[W]hat if it's broken?," Defendant Johnson repeated that there was still nothing that could be done. (*Id.*, PageID.5.) She then walked away. As she was leaving, Plaintiff asked if he could at least have some medication to relieve the pain and swelling. Defendant Johnson replied, "We'll see." (*Id.*)

The following day, Plaintiff spoke to Nurse Finnigan (not a Defendant). Plaintiff showed Finnigan his finger and explained what Defendant Johnson had told him. Finnigan told Plaintiff that Defendant Johnson was new and did not know what to do. Finnigan sent Plaintiff to an onsite medical care facility at about 7:00 p.m. There, Defendant Rajala provided Plaintiff with ibuprofen, an ice pack, and a finger splint. However, Defendant Rajala did not provide tape to hold the splint in place. Instead, Defendant Rajala gave Plaintiff two band-aids to hold it on. Defendant Rajala explained to Plaintiff that he needed to remove the splint when he showered.

One week later, on December 21, 2017, Plaintiff's finger was x-rayed. The result showed a complete fracture at the beginning of Plaintiff's middle finger. Plaintiff alleges that the splint was inadequate to stabilize the break. In addition, Plaintiff contends that he was not provided medication strong enough to alleviate pain, causing him to suffer unnecessarily and to lose multiple nights of sleep. Plaintiff filed a grievance about his lack of treatment on December 22, 2017.

On January 31, 2018, a second x-ray was taken of Plaintiff's finger. Thereafter, Defendant Oh advised Plaintiff that he would need to be sent off-site to a hand specialist. Defendant Oh advised Plaintiff to remove his splint every so often, to check his range of motion, and to exercise.

On February 7, 2018, Plaintiff wrote a kite to Warden LeSatz, in which he described his pain and pleaded for medical attention and pain medication. On February 21, 2018, Plaintiff

3

spoke with Defendant Neimi, and Neimi promised to come to Plaintiff's housing unit later to ask Plaintiff about his medical needs. Defendant Neimi did not follow through on his promise. Over the course of two months, Plaintiff sent over a dozen kites and letters to both Defendants Warden LeSatz and RUM Neimi. Plaintiff alleges that both Defendants were made fully aware of Plaintiff's complaints and failed to take action.

Three months after his injury, on March 2, 2018, Plaintiff was finally seen by a hand surgeon, Dr. Blotter, at an off-site facility. Dr. Blotter advised Plaintiff that the facility had made a bad decision to wait three months to send Plaintiff to a specialist. In addition, Dr. Blotter told Plaintiff that the Defendants' advice to remove the splint for showers and for testing range of motion was improper. Dr. Blotter informed Plaintiff that the failure to completely immobilize the finger had led to permanent damage and that Plaintiff may develop a condition called "Mallet finger," which is an injury to the ligament that will permanently prevent the finger from straightening at the terminal joint. In addition, Dr. Blotter advised that it was too late for any corrective surgery, but indicated that, if Plaintiff continued to suffer pain, a bone fusion of the joint could be performed.

On March 5, 2018, Plaintiff filed a grievance against Defendants LeSatz and Neimi for the actions in contributing to the delay of his treatment.

Plaintiff contends that Defendants denied or delayed medical treatment in violation of the Eighth Amendment. He also alleges that Defendants' actions or inactions violated the Equal Protection Clause. Plaintiff seeks compensatory and punitive damages.

II. <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

   III. Supervisory Liability

Plaintiff alleges that Defendant LeSatz, as warden at AMF, is responsible for failing to oversee the delivery of medical services and failing to respond to Plaintiff's grievances and complaints. Plaintiff also alleges that Defendant Neimi failed to take action on Plaintiff's kites and grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's assertions that Defendants LeSatz and Neimi failed to supervise other employees and failed to respond to Plaintiff's kites and grievances fall short of alleging active

6

unconstitutional behavior by either Defendant. Because Plaintiff makes no other allegation against Defendant LeSatz, he fails to state a claim against LeSatz.

## IV. Equal Protection Clause

Plaintiff contends that Defendants' actions violated his rights under the Equal Protection Clause. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Although Plaintiff alleges that Defendants treated him poorly, he does not allege that he was treated differently than others who were similarly situated. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim.

## V. Eighth Amendment

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by being deliberately indifferent to his pain and serious need for medical care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent

with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### A. Defendant Neimi

In addition to alleging that Defendant Neimi failed to respond to his kites and grievances, Plaintiff complains that, on February 21, 2018, he spoke with Defendant Niemi about his unhappiness with his medical treatment. Defendant Neimi allegedly told Plaintiff that he would come by Plaintiff's housing unit later in the day, but Neimi failed to fulfill his promise.

As the Court previously has discussed, Defendant Neimi cannot be held responsible on a theory of supervisory liability for any failure of medical personnel to provide adequate treatment. *Iqbal*, 556 U.S. at 676; *Grinter*, 532 F.3d at 576. Nor can he be held liable for failing to respond to kites or grievances about those officials. *Shehee*, 199 F.3d at 300.

Moreover, the fact that Defendant Neimi failed to have further discussions with Plaintiff about his concerns more than two months after the injury falls short of alleging deliberate indifference. Indeed, the facts alleged by Plaintiff fail to indicate that any other action could have been taken by Defendant Neimi, given that Plaintiff had already been referred for a consultation with a specialist. By his own admission, Plaintiff had seen medical providers about his concerns and had been told that he would be referred to an off-site specialist on January 31, 2018. Defendant RUM Neimi, as a custody officer, had no authority to direct medical personnel to take additional actions. For all these reasons, Plaintiff fails to demonstrate that Defendant Neimi engaged in active

unconstitutional conduct that showed deliberate indifference to Plaintiff's serious medical needs. The Court therefore will dismiss Plaintiff's claims against Defendant Neimi.

### B. Defendant Sholden

Plaintiff alleges that Defendant Sholden was deliberately indifferent to his serious medical need when he failed to take immediate action to address Plaintiff's report of injury and failed to ensure that Plaintiff received medical care for two and one-half hours. Plaintiff alleges that Defendant Sholden saw that Plaintiff's finger was swollen and that Plaintiff complained of pain, but Defendant Sholden told Plaintiff that he would have to wait until the nurse saw him during rounds.

Assuming without deciding that Plaintiff's swollen finger presented an objectively serious medical need, Plaintiff fails to demonstrate that Defendant Sholden understood the seriousness of the need for immediate medical attention and disregarded that need. Defendant Sholden did not refuse to allow Plaintiff to seek medical attention; he merely indicated that Plaintiff should wait until the nurse performed rounds. As a consequence, Plaintiff's allegations against Defendant Sholden fail to rise to the level of deliberate indifference.

### C. Defendants Rajala, Johnson, & Oh

Upon initial review, the Court concludes that Plaintiff has stated facts sufficient to state an Eighth Amendment claim against Defendants Rajala, Johnson, and Oh.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants LeSatz, Neimi, and Sholden will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the equal protection claims against the remaining

Defendants. Plaintiff's Eighth Amendment claims against Defendants Rajala, Johnson, and Oh remain in the case.

An order consistent with this opinion will be entered.

Dated: January 23, 2019 /s/ Gordon J. Quist
Gordon J. Quist
United States District Judge